24-2013 United States v. Rivera. Counsel for appellant if you will make your appearance and proceed please. Chief Judge Holmes, Judge Carson, Judge Rossman may it please the court. This case is Michael Rivera's complaint is about two distinct and what I'm going to discuss here today is two distinct pieces of testimony that brought in evidence that was not only extremely prejudicial which is me just having sour grapes but more importantly is evidence that the court did not uphold its gatekeeping function to exclude specifically image an image that was possibly sent over text was the testimony of agent Sean McManus and then agent Dan O'Donnell and his testimony expert testimony that violated in our argument the specific dangers of law enforcement testimony which is becoming a mouthpiece for the prosecution and speaking exclusively to that idea. Is the standard in each instance abuse of discretion? Your Honor the standard is abuse of discretion it's I think de novo as far as how the court reviews that because of the two-step test that is in But doesn't the first test just go to whether the court actually recognizes the need to do the hearing and to go through the process and then the second step is actually how it undertook it? Correct Your Honor. Okay so we're in the how you undertook took it phrase right? Yes Your Honor. I thought you were making a slightly different argument about agent O'Donnell that you were contending the blind testimony itself is inherently unreliable. Maybe I misunderstood. Your Honor that's where I didn't use the delayed disclosure disclosure as a major basis of the testimony that's what I think the United States took the argument to be the concern that we had here was at the Daubert hearing agent Dan O'Donnell's testimony was grooming grooming grooming and cross-examination by Miss Booth was on that and trying to pin him down as far as his experiences in dealing with the grooming however at trial then he became it morphed into his experience with the behavioral unit and the large groups and then essentially the blind testimony became that his experience all individuals or all offenders because that was the only experience he had was with offenders that there was no reason why this never happened and the the issue that I think we had there was there's no when an expert comes in and testifies that he's never seen a false false accusation outside of child kidnapping cases was his distinction but in the grooming instance he's essentially coming in and saying that this in my experience is wholly true. Your Honor I would... Did you cross-examine him? Miss Booth did Your Honor I did not. Okay you weren't trial counsel so did she I mean she brought this out like the things you're talking about are different than what we have here you're talking about groups this is one-on-one grooming you know she brought out the differences in his testimony in the case before the jury didn't she? She did Your Honor but the concern that I had here and opposing counsel deals with it that says that in a footnote counsel says that he requested documents the concern is in a civil case we have all kinds of information to cross-examine this with. Agent Dan O'Donnell had two publications that he had made and those were both on 9-1-1 calls and missing children but so his response and every time Miss Booth brought him back that was 13 years and hundreds of cases and when she asked him if he could identify a specific time that involved a false allegation he says I don't think so and I can't think of one off the top of my head and so it becomes this how do I pin how do I pin you down and cross-examination doesn't serve that purpose because the expert his basis has to be reliable there has to be some way to challenge that basis besides the one that always fails me at trial which is just liar liar it doesn't work and so the the concern here is without some form of challenging the 13 years and hundreds of cases training experience him saying I've never met a false accusation he simply is an individual that is presenting and this is the argument that I believe I make your honor that he's simply presenting the government's case true he's here as a blind expert he's not saying this is what this individual did and the government says that I'm better off mr. Rivetta is better off without having had that testimony I disagree because he comes in as an FBI agent that says that I've been doing this for this many years and I've never once ever seen a false I struggle with your argument in two aspects one what if that's a truthful statement what what is wrong with saying that I mean it all that does is go to the context in which he received the cases I mean if he received cases that were of the nature that they were already built up such that they were strong I mean get give notice he's in in the FBI headquarters and he probably doesn't see every case so all he said was to my knowledge I have not encountered a case that would involve false allegations he didn't say there were no false allegations in any case right correct your honor the problem and the concern here is as an expert he comes in cloaked in this title of expert and is providing testimony that is supposed to be helpful to the finder of fact and that testimony in this case was that grooming exists and it exists if you identify it I've never identified in any cases I've ever seen you said that he spoke about grooming and grooming is relevant to this case is it not correct it grooming is relevant your honor but when he has a statement that is I've never seen a false example how do I test that reliability how how do I challenge the effect and your honor the courts correct okay let me let me pause if you if you allow me for a second how do I test the reliability of that statement that I've never encountered a false allegation in my work how does the defense challenge that statement I mean is that what you're saying how do how would I be in a position is that your concern how would I be in a position to challenge the reliability of that statement without without him having provided cases and other information that then I am able to review and go back and challenge yes your honor I have no way to challenge I have no way to challenge that statement because he makes it as the expert here to tell the jury that there are in effect no false allegations and see that's it I mean there's an inferential leap from him saying in my experience I've encountered false allegations to saying there are no false allegations I mean if they had asked him in the whole universe said do you think that there would ever be a false allegation and he said yeah I don't think there would be that's a different matter because then that clearly would implicate the defendant as being part of that but he all he did well let me let me phrase it this way I clarified at least I understood that your argument involves right now the point about testing the reliability of that statement well is that statement an opinion or is that statement of fact all they asked him based upon your experience have you encountered right I mean I can pull it up but my memory is that's what it was based on your experience have you encountered a false allegation no I haven't that's a statement of fact that's not an opinion in your in your honor he may hold that opinion but when he comes in as an expert and says that he has no experience with independent independent in innocent defendants he doesn't have experience with single offender versus large groups his testimony in the United States sites is in the brief but his experience with the child exploited exploitation unit was also a large-scale group and in is it is it relates to the large-scale group why is that not are you contending that that is not relevant it is grooming knowledge you know his knowledge of grooming based upon these large-scale groups are you contending that's not relevant to to to offer it to to provide context for the jury as to grooming as it relates to an individual your honor I think it's I think it's very I don't think it's relevant or relatable to Michael Rivera who is a single individual who is alleged to have had a relationship with one child why not and what a source of authority do you have for that proposition your honor I don't think it's because it comes back to in Nacio the court talked about the ability to use your experience and how the experience leads that opinion if his experience is dealing with large groups of convicted offenders after the fact that doesn't deal with individuals that are sitting in court before the court and are on trial for that fact did you make that argument in the in the district court anywhere that the was focused on large-scale groups that it was there for unreliables that anywhere in your the government says you never made the argument your honor and I looking I looked for that we made the objection I don't I can't point the court to it at this point in time your honor so so your your position is that it's preserved your honor my position yes you can't point me to where I would I would ask the ability to supplement this after this argument your honor but no I cannot your honor I see your honors I see I have five minutes left I'd like to move to agent McManus and the possible the issue there was that agent McManus after having had a dog hearing that then talks says he's talked to a person who talked to an engineer and said that it was possible and that's at the statement that came in that was extremely harmful it comes from by way of an expert an expert agent McManus talking an expert who had been designated on records talking to a supervisor talking to an expert at Verizon saying that this is common or possible and that's it 304 and so we have agent McManus who is it designated as a record historical records act expert who then becomes an expert and testifies about file transmutation or that changing over well historical records but also records of the kind that we're at issue here right correct your honor not not just any records I mean records involving electronic transmissions right correct your honor okay and if you would let me just walk through a scenario and then tell me where I'm wrong on this as I understand what happened here agent McManus contacts this Verizon supervisor he gets the information he uses that information in offering an opinion as to whether it's possible whether it's possible to have a transfer of the mode of the file the kind of file okay this is what I would ask you to respond to why if agent McManus is a qualified expert okay about documents and in electronic documents if he is a qualified expert why wouldn't it be within his purview to seek information that would help him make a determination note he didn't parrot what the person told him he was asked how did you get the information so he didn't offer a verbatim statement of what the guy told him he takes this information he digests the information I'm offering a position for you to respond to he digests the information and then he responds with his own expertise that's I'll stop there what's wrong with that scenario because your honor I believe agent McManus parrots what the expert at Verizon told him because the US says that the specific basis for his opinion had come from Verizon in its brief and that's the issue here is that we have an individual who much like the United States be smalls where the court talks about a formal statement to officers versus a casual remark to an acquaintance this is on the point of contention and that we cited that over and over in their brief so this is your Crawford argument yes you're yes you're which relates specifically to the fact that I believe agent McManus did not have the experience or in wasn't designated it doesn't have the understanding which is why he calls Verizon and then makes that he simply tells us what they told him that it was possible but under 703 can't I can't as an expert an expert rely upon information informing his own opinion in other words you know in this big big world you don't you're an expert on everything you may have a scope of knowledge and there's this one little you know segment of it that you don't fully understand but you can synthesize that in making an overall determination why what's wrong with that that's what I thought 703 contemplates your honor and I agree that's what 703 contemplates what it doesn't contemplate is an expert who is designated as expert on records who's relying then on what was in his CV as a familiarization with Verizon and other cell phone companies it was a two familiarization then coming in and saying I did not know what happened I called the supervisor who then spoke to an expert and agent I don't think the government says that agent has talked to the engineer the engineer says yes it's possible and so that possibility theory that was related and we don't know what was related how it was related or how it was synthesized to use the court's words back to agent McManus agent McManus tells us that that opinion comes from Verizon isn't that what makes it non-testimonial though I mean if the Verizon agent if he just said hey I've got this guy take a look at his phone records and tell me if it's possible that the nature of this file changed in transmission to him and the guy said oh yeah I found his file I looked at it and that's exactly what happened and he parroted that as opposed to taking what this general information that the guy talked to him about possibilities and then bringing it out as part of his own testimony but I don't think I mean wouldn't the first one be testimonial arguably and the second one is not your honor I think the first one's testimonial I think the problem that we have here is one it's the government's burden to show that that's not what happened because they're the proponent of that evidence but to me I mean you heard that I mean that wasn't the testimony I mean we can read the testimony correct your honor it was the testimonies on page 304 regarding that portion and I'm out of time your honor may respond okay thank you thank you may it please the court good morning your honors my name is Elliot Neil and I represent the United States in this matter so so picking up where I left off I'm gonna jump in front of Judge Rossman here she's she's she's like me we're what I was just talking to your your colleague about is a situation where I think something would be clearly testimonial and that is where you have a witness who calls somebody and says hey look up this specific guy tell me exactly what happened with his with his file and you know so I can parrot it back to the jury I mean isn't what you're trying to uphold here very close to that except it just sticks in the word possibility your honor I don't think it's close to that scenario as agent McMahon has testified to at trial agents in his position as part of that cellular analysis survey team are constantly in contact with employees at Verizon and other telecommunications companies asking questions about how the network operates you know exact questions like this is it possible I mean that doesn't make it less testimonial what's coming from the other side though just the fact that he talks to him all the time does it no it doesn't your honor but I think what's important is that the analysis of whether that statement is testimonial looks at the declarant looks at the the understanding the knowledge and the intent of the declarant and in this case that Verizon supervisor so the question is whether that declarant in making that statement believe the statement to be testimonial and there's no indication from the record or from special agent McManus's testimony that that's what the Verizon supervisor would have understood his statements to be doing okay so if if on cross if the defense lawyer had said where did you get this information well I got it from the Verizon person what did you tell the Verizon person well I told it right the Verizon person that I was getting ready to testify in court against mr. Rivera and that I needed to find out if this file had changed character in transmission then we might have a different situation there correct because in that situation the record would be clear that the declarant understood this was going to be used in testimony in court correct and I'll note that mr. Rivera in his briefing focuses a lot on I was trial counsel so he focused a lot on what I said about special agent McManus's preparation and the circumstances of his reaching out to the Verizon supervisor that doesn't matter your honor it doesn't matter what my intent was it doesn't matter what special agent McManus's intent was it doesn't matter that we were preparing for trial what matters is again what that Verizon supervisor believed what judge Carson has been speaking to is the confrontation clause aspect I thought there was also an aspect related to the reliability of this testimony generally as an expert in my am I missing that I believe you're correct your honor as to as to reliability however I mean the district court performed a rule 403 analysis well no well the district court would have performed I guess a rule 702 analysis and the question would be whether it abused its discretion in doing so in bed leads me to ask what was the scope of his qualification as an expert because I mean the phrase was used by opposing counsel he was a document he was a document you know expert or something which wouldn't necessarily lend itself to believe he'd be situated to be talking to Verizon about changing of file types I agree if historical records were the only topic that special agent McManus was accepted as an expert in that's not the case your honor the United States and its rule 16 disclosure and expert notice identified that special agent McManus was would be offered as an expert and I don't remember the exact wording right now but essentially offered as an as an expert and how the Verizon Network operates that topic correct each of those topics and again I don't have the exact wording right in front of me but it did include a general topic of how the Verizon Network operates or I believe how perhaps how telecommunications networks operate so that testimony was squarely within the items in which we offered special agent McManus as an expert in to begin with it did how should we be honored I don't believe it's strange in the sense that a special agent McManus testified to again he often asks employees like the employee he reached out to these questions although it did happen after that Daubert hearing and in preparation for trial there's no indication from the record that he communicated that to the Verizon supervisor or that the Verizon supervisor had any knowledge or indication that this was in preparation for trial or was in place of testimony you know whether a statements testimonial is highly fact-dependent as your honors are I'm sure are well aware and it turns on questions such as the formality of the situation in which the statement occurred and that comes from Ohio v. Clark let me stop you for a second I think you just said that there was no indication that he called the Verizon employee to ask about something related to this case is that did I misunderstand that yes your honor this this was a call that was placed for purposes of this case correct okay because he had a question about how the network worked we don't know what he said to the Verizon employee but we do know that he called to ask about something that he wanted to use in this case but that's correct okay that's correct and your honor that also does touch on the question of reliability that your honor asked earlier and that's mr. Rivera has put forth this argument like the Verizon supervisor's statement to special agent McManus was the only source of information that special agent McManus was relying on that's not the case special agent McManus testified that he also relied on let's see so special agent McManus in addition to testifying that he relied on what the Verizon supervisor told him he also testified that he relied on his his general training and experience with Verizon records and and that comes from volume 4 at page 637 he also referenced additional training and experience and discussions with Verizon he referenced a number of academic papers about transcoding videos across cellular carriers and the internet so you think he was positioned to exercise independent judgment in evaluating this information when he offered his opinion absolutely your honor I do and that experience and prior training in addition to this phone call with the Verizon supervisor is what allowed him to then make his expert opinion that that it was possible it is that that is the government's position your honor I do your honor and I do think that that we've carried the burden on that it seems to me that in your briefing you're not marshaling the harmlessness standard and so I wasn't sure how you if we were to get there how we would say that you carry your burden your honor I think we see that that the any potential error was harmless in the fact that the jury still heard evidence that a file transformation like that was possible in the form of officer Weir's experiment that he conducted yes in addition your honor I think one of the most important parts when looking at whether this error was harmless is the fact that whether the file type changed and whether the victim did in fact send the video to Mr. Rivera doesn't actually matter when it comes to the conviction the crime was complete when the victim made the video so while that file transformation was was probative and helped support the government's case it's not actually one of the elements of the case and the video was on her phone right correct yeah correct so you know even without that testimony the jury very likely still would have convicted mr. Rivera and that's on the strength of a mountain of other evidence your honor including the victim's own testimony where she testified that the defendant asked her to take naked images and videos of herself and that she did that and at that point the crime was complete your honor one other point I want to make about the confrontation clause issue is that the government does not believe that that this issue was actually preserved mr. Rivera argues that yes your honor but saying I want to subpoena this person to testify is not the same thing as saying that person's statements are testimonial or there is a Crawford to the merits of whether the Crawford objection would be availing but in terms of the preservation question under our precedent to put that issue squarely before the district court for a ruling your honor I just think that if if counsel intended to preserve a confrontation clause argument or objection he would have said so what does our precedent require does it require magic words that you don't utter the words confrontation clause you're out of luck for preservation I don't believe so your honor although the case cited by mr. Rivera and that's USB Robinson I don't I don't find that compelling I don't think that that indicates that that mr. Rivera's objections as he made them at trial preserve preserve that objection that's so that comes your position as the constitutional component is not but the evidentiary piece it's correct I have a question for you about agent O'Donnell's testimony I got the sense that the government's brief that you seem to argue that a blind witness can never engage in bolstering because by design they're unfamiliar with the facts of the case and I just wanted to know what the government's position on is on that generally and also in this case so I would not go so far as to say that it can never be bolstering because correct that's available correct correct and you know as we noted in the briefing witnesses who support the government's case are always in at least at some level going to bolster other parts of the case right or the government wouldn't call that witness or present that evidence when it comes to bolstering I mean bolstering it it's just it's not apparent how special agent O'Donnell's testimony bolstered the testimony of any other witness when he never offered any opinion about Jane does credibility he never offered any opinion about mr. Rivera's conduct right and my response to that would be by us offering him as a blind expert we were minimizing as much as possible that risk of bolstering right any amount of bolstering would would be heightened if he had provided an opinion on Jane does credibility or on whether mr. Rivera had groomed Jane Doe and he didn't do that and we specifically did not ask him questions about that we specifically offered him as a blind expert to minimize risk of bolstering and I think that's exactly what occurred a minimal amount of bolstering if at all another point with special agent O'Donnell's testimony that I wanted to note in response to mr. Rivera's argument today is that it was mr. Rivera himself that elicited a lot of the testimony that he now complains about so mr. Rivera notes that the special agent O'Donnell's testimony was offered originally as you know for grooming and then sort of morphed into this testimony that he had never encountered or he couldn't think of any cases he had encountered that involved false accusations of grooming I hate to interrupt you counsel but you're running over and so I have your honor so thank you colleagues have any questions all right thank you very much thank your argument cases submitted thank you counsel for your fine arguments